## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA STOECKER,<br><br>       Plaintiff,<br><br>   v.<br><br><br><br>BRYN MAWR BANK CORPORATION, ANDREA F. GILBERT, WENDELL F. HOLLAND, SCOTT MAHALEY JENKINS, DIEGO F. CALDERIN, FRANCIS F. LETO, BRITTON H. MURDOCH, LYNN B. MCKEE, MICHAEL J. CLEMENT, A. JOHN MAY, and KEVIN TYLUS,<br><br>       Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Patricia Stoecker ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bryn Mawr Bank Corporation ("Bryn Mawr" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Coherent and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Bryn Mawr and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between Bryn Mawr and WSFS Financial Corporation ("WSFS").

2.     On March 9, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with WSFS.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 0.90 shares of WSFS common stock for each share of Bryn Mawr common stock owned (the "Merger Consideration").

3.     On May 6, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Bryn Mawr and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Bryn Mawr shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, the owner of Bryn Mawr shares.

9.     Defendant Bryn Mawr is incorporated under the laws of Pennsylvania and has its principal executive offices located at 801 Lancaster Avenue, Bryn Mawr, Pennsylvania 19010. The Company's common stock trades on the NASDAQ under the symbol "BMTC."

10.     Defendant Andrea F. Gilbert ("Gilbert") is and has been a director of Bryn Mawr at all times during the relevant time period.

11.     Defendant Wendell F. Holland ("Holland") is and has been a director of Bryn Mawr at all times during the relevant time period.

12.     Defendant Scott Mahaley Jenkins ("Jenkins") is and has been a director of Bryn Mawr at all times during the relevant time period.

13.     Defendant Diego F. Calderin ("Calderin") is and has been a director of Bryn Mawr at all times during the relevant time period.

14.     Defendant Francis J. Leto ("Leto") is and has been the President, Chief Executive Officer ("CEO") and a director of Bryn Mawr at all times during the relevant time period.

15.     Defendant Britton H. Murdoch ("Murdoch") is and has been the Chairman of the Board of Bryn Mawr at all times during the relevant time period.

16.     Defendant Lynn B. McKee ("McKee") is and has been a director of Bryn Mawr at all times during the relevant time period.

17.     Defendant Michael J. Clement ("Clement") is and has been a director of Bryn Mawr at all times during the relevant time period.

18.     Defendant A. John May ("May") is and has been a director of Bryn Mawr at all times during the relevant time period.

19.     Defendant Kevin Tylus ("Tylus") is and has been a director of Bryn Mawr at all times during the relevant time period.

20.     Defendants Gilbert, Holland, Jenkins, Calderin, Leto, Murdoch, McKee, Clement, May, and Tylus are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Bryn Mawr, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Bryn Mawr is the holding company for The Bryn Mawr Trust Company ("BMT") which was founded in 1889, and is headquartered in Bryn Mawr, PA. The Company offers consumer & commercial loans, equipment leasing, mortgages, insurance and wealth management services, including investment management, trust & estate administration, retirement planning, custody services and tax planning and preparation. The firm operates through two segments: Wealth Management, and Banking. The Wealth Management segment provides trust administration and other related fiduciary services, custody services, investment management and advisory services, employee benefit account and individual retirement account administration, estate settlement, tax services, financial planning, and brokerage services. The Banking segment is comprised of commercial and retail banking.

### The Company Announces the Proposed Transaction

23.     On March 10, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> WILMINGTON, Del. and BRYN MAWR, Pa., March 10, 2021 (GLOBE NEWSWIRE) -- WSFS Financial Corporation (NASDAQ: WSFS) and Bryn Mawr Bank Corporation (NASDAQ: BMTC), jointly announced today the signing of a definitive merger agreement whereby Bryn Mawr Bank Corporation ("Bryn Mawr") will merge with WSFS Financial Corporation ("WSFS"), in a transaction valued at approximately $976.4 million. Simultaneously with the merger, The Bryn Mawr Trust Company ("BMT"), the wholly owned subsidiary of Bryn Mawr, will merge into WSFS Bank, a wholly owned subsidiary of WSFS. The combination of two of the high performing, locally-based financial services companies in the Greater Philadelphia and Delaware region solidifies WSFS' position as the preeminent, locally-headquartered bank for this region. With nearly $20 billion in assets and an approximately $43 billion Wealth Management business as of December 31, 2020, WSFS believes that following the merger it will be the only bank in the region with distinct market-share advantages,

including market knowledge, local decision-making, a full-service product suite and a balance sheet to compete with larger regional and national banks.

Under the terms of the agreement, stockholders of Bryn Mawr will receive 0.90 of a share of WSFS common stock for each share of Bryn Mawr common stock. The per share value equates to an implied value of $48.55 for Bryn Mawr stockholders based on the closing price of WSFS stock on March 9, 2021.

"This combination aligns with our strategic plan," said Rodger Levenson, WSFS' Chairman, President and CEO. "Combining with Bryn Mawr allows us to accelerate our long-term strategic objectives, including scale to continue to invest in our delivery and talent transformations. This combination also creates the premier wealth management and trust business in the region and the sixth largest bank-affiliated wealth management and trust business nationwide under $100 billion in assets. Together, we are poised and positioned to continue to serve and outperform for all our constituents, and to deliver sustainable high performance for years to come."

Frank Leto, President and CEO of Bryn Mawr, said, "We strongly believe in the value creation by combining with WSFS and enhancing the strengths of our institutions. This is a sound decision for Bryn Mawr, our stockholders, our Clients and the communities we serve. We are combining with WSFS because it is an established institution with deep roots in the region and the utmost focus on doing the right thing for our Clients."

The combination is WSFS' ninth since 2010, including traditional banks and other fee-based businesses in southeastern Pennsylvania and Delaware. WSFS' proven track record of successful integrations, combined with its strong organic growth and purposeful expansion into the Greater Philadelphia region, has resulted in significant community and economic investments.

To continue its commitment to the communities it serves, WSFS is making a $2 million grant to the WSFS Community Foundation to support underserved communities as part of its mission. Both companies' long-standing commitment to serve their communities will remain vital to WSFS' future.

WSFS anticipates consolidating approximately 30% of the combined banking offices due to geographic overlap and optimization opportunities within the network.

WSFS expects pre-tax merger and restructuring costs of approximately $127 million and to achieve annual cost synergies of approximately $73 million, once fully phased in by 2023. The merger is expected to be accretive to WSFS' earnings per share in 2022, excluding the one-time merger and restructuring costs noted above, and 13.4% accretive once all synergies are achieved in 2023, generating an internal rate of return (IRR) of approximately 18.0%.

After closing, Frank Leto, President and CEO of Bryn Mawr, will join the Boards of Directors of WSFS Financial and WSFS Bank along with two mutually agreed upon current directors of Bryn Mawr's Board.

The merger agreement has been approved by the boards of directors of both companies. Closing of the transaction is subject to customary approvals by regulators and stockholders of both companies. Pending those approvals, the transaction is expected to close early in the fourth quarter of 2021.

Piper Sandler & Co. acted as financial advisor to WSFS, and its legal counsel was Covington & Burling LLP. Keefe, Bruyette & Woods, Inc., A Stifel Company, acted as financial advisor to Bryn Mawr and its legal counsel was Squire Patton Boggs LLP.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24.     On May 6, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

26.     The Proxy Statement contains projections prepared by the Company's and WSFS's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     With respect to the WSFS Financial Forecast, the Proxy Statement fails to disclose WSFS's prospective net income and balance sheet and the basis for using an estimated long-term annual growth rate of 6.5% for WSFS's net income and 5.0% for WSFS's balance sheet.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.    Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding KBW's Financial Opinion**

29.     The Proxy Statement contains the financial analyses and opinion Keefe, Bruyette & Woods, Inc. ("KBW") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to KBW's *Bryn Mawr Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

31.     With respect to KBW's *WSFS Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

32.     With respect to KBW's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed by KBW in the analysis.

33.     With respect to KBW's *Relative Contribution Analysis*, the Proxy Statement fails to disclose: (i) the balance sheet data for WSFS as of December 31, 2020; (ii) the financial and operating forecasts and projections of Bryn Mawr that were provided by the Company's management; and (iii) the market price information as of March 8, 2021.

34.     With respect to KBW's *Financial Impact Analysis*, the Proxy Statement fails to disclose: (i) the closing balance sheet estimates as of September 30, 2021 for both companies; (ii) 2021 and 2022 EPS "street estimates" for both companies; (iii) the assumed long-term growth rates for both companies; and (iv) the pro forma assumptions.

35.     With respect to KBW's *Bryn Mawr's Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of the discount rates ranging from 10.0% to 14.0%; (ii) Bryn Mawr's implied terminal value; (iii) the basis for KBW's assumption that Bryn Mawr would maintain a tangible common equity to tangible asset ratio of 8.00%; and (iv) the basis for KBW's application of a range of 11.0x to 15.0x Bryn Mawr's estimated 2026 earnings.

36.     With respect to KBW's *WSFS's Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of the discount rates ranging from 10.0% to 14.0%; (ii) WSFS's implied terminal value; (iii) the basis for KBW's assumption that WSFS would maintain a tangible common equity to tangible asset ratio of 8.00%; and (iv) the basis for KBW's application of a range of 12.0x to 16.0x WSFS's estimated 2026 earnings.

37.     With respect to KBW's *Pro Forma Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the pro forma assumptions; (ii) the inputs and assumptions underlying KBW's use of the discount rates ranging from 10.0% to 14.0%; (iii) the pro forma

combined entity's implied terminal value; (iv) the basis for KBW's assumption that the pro forma combined entity would maintain a tangible common equity to tangible asset ratio of 8.00%; and (v) the basis for KBW's use of a range of 12.0x to 16.0x the pro forma combined entity's estimated 2026 earnings.

38.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any registration or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.    Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above

in connection with their decision to approve and recommend the Proposed Transaction.

46.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Bryn Mawr within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Bryn Mawr, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54.     In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 12, 2021                                          Respectfully submitted,

                                                             By: */s/ Joshua M. Lifshitz*
                                                             Joshua M. Lifshitz
                                                             Email: jml@jlclasslaw.com
                                                             **LIFSHITZ LAW FIRM, P.C.**
                                                             1190 Broadway,
                                                             Hewlett, New York 11557
                                                             Telephone: (516) 493-9780
                                                             Facsimile: (516) 280-7376

                                                             *Attorneys for Plaintiff*